THE STATE v. JOHN COX.

*Murder—Manslaughter—Evidence.*

1. When the entire charge of the Judge is not sent up, it will be presumed that it is correct, except in those particulars in which errors are assigned in the case on appeal. -

2. The only testimony in relation to the fact of the homicide was, that witness and deceased were standing on opposite sides of the fence engaged in conversation, when prisoner approached and told deceased he wished to see him a minute, to which deceased replied, " Come on, and see me now "; thereupon witness turned to go into the house, and as she did so, she heard prisoner say, " What you put your hand back there for?" then she heard a noise like running, and then a pistol fired and a body fall, after which she heard some one running off. Deceased was found next morning near the spot, with a bullet-hole in his breast: *Held*, that the evidence disclosed no element of manslaughter, and the Court committed no error in charging the jury that the prisoner was guilty of murder or nothing.

INDICTMENT for murder, tried before *Boykin, J.,* at Fall Term, 1891, of JONES Superior Court.

The indictment charges the defendant with the murder of William Sutton. He pleaded not guilty. · The evidence produced on the trial tended very strongly to prove the murder as charged. Numerous witnesses were examined for the State. The prisoner introduced no evidence.

Alice Simmons, a witness for the State, testified as follows : "Remember evening Sutton was killed; I was at home at

my mother's; I was in the house putting on supper; Sutton came up and called me to the door; he told me to come out there; he asked me if anyone helped to take up certain fodder. I went to the gate; Sutton was on the outside, I on the inside, right at him; he gave me his pipe to smoke some—I had carried fire to him to light it; we saw a man coming up the road; he asked who it was; I said I don't know; it seems as if he was going by, but he came to the gate; he said, 'Sutton, is that you?' Sutton said, 'John, is that you?' John said, 'Umph, yes.' The man said, 'I want to see you a minute.' Sutton said, 'Come on and see me, then.' I whirled off and went towards the house; as I did so, the man said to Sutton, 'What you put your hand back there for?' I went on then to the house and heard a noise like they were running; I hurried on then, and just as I got in the door, I heard the pistol shot and heard the body fall; I then heard one running off. The man was the defendant Cox. * * * The man came walking straight up to the gate. Cox came up right to the gate; I was just on the other side; he could have touched me when he first came up; it was deep dark; Sutton was asking me to have him some fish cooked by next morning. * * * I did not see the shooting—as I got up in the door, I saw the flash of the pistol; after the shooting I heard a man running up the road towards Kinston; he came from towards the fork. Sutton came from the direction of Kinston. The dead body was found above the gate towards Kinston."

This witness was the only person, except the deceased and prisoner, present at the homicide.

Dr. Hughes testified: "Saw dead body of Sutton next morning; * * * I saw the wound; it was about half-way between the left nipple and medial line; it was at a vital point—it was near the heart. If the wound had gone straight in and through, it would have penetrated the heart. I did not examine the wound; it might have been made by a bullet

or any sharp-pointed round instrument, like a spindle; I cannot say how the death was produced; a pistol ball could have made the wound."

There was much other testimony as to the identity of the prisoner and antecedent declarations of malice.

The Court, among other things, charged the jury that, upon the testimony, the defendant was guilty of murder, if he were guilty of any offence at all; that there was no element of manslaughter in the case.

This is assigned as error.   There was a verdict of guilty and judgment of death, from which the prisoner appealed.

*The Attorney General*, for the State.
No counsel for defendant.

MERRIMON, C. J.: The whole charge of the Court to the jury is not sent up.   The presumption is that the instructions given were sufficient and correct, except in the respect as to which error is assigned.   To that alone we can properly advert.

There was evidence of express malice, and the whole evidence on the trial tended strongly to prove the murder as charged in the indictment.   The Court instructed the jury " that the defendant was guilty of murder, if he was guilty of any offence at all; that there was no element of manslaughter in the case."   Assuming, as we must, that it gave other appropriate instructions, it might give that assigned as error, if there was no evidence from which the jury might find the prisoner guilty of the lesser offence of manslaughter. The burden of proving the lesser offence was on the prisoner, and to prove the same, not by mere preponderance, but to the satisfaction of the jury.   *State* v. *Jones*, 98 N. C., 651; *State* v. *Dickerson*, Id., 708; *State* v. *Byers*, 100 N. C., 512.

He insists that the evidence above recited constituted such evidence, and that the Court erred in failing to so tell the

jury.    We concur with the Court in saying that the evidence, in no just or reasonable view of it, presented any element of manslaughter.    So far as appears, the prisoner and the deceased did not fight by consent upon a sudden quarrel, nor did the latter give the former legal provocation in any way.    It does not appear that the deceased struck, or offered to strike, the prisoner, or that he had a pistol, knife or other weapon from which it might be inferred he intended to, or did so, in the dark.    It does not appear that the deceased said or did anything to provoke the prisoner to slay him in the heat of passion.    The mere fact that the witness heard the prisoner say to the deceased, as they walked off, "What you put your hand back there for?" and that she "heard a noise like they were running," did not prove that they fought suddenly, or that the deceased struck or offered to strike the prisoner.    Nor did the fact that the fatal wound was inflicted in front of the deceased's person, of itself, prove that the parties had fought, or that the deceased had given the prisoner legal provocation.    These facts could give rise to no more than vague conjecture in the absence of evidence of some positive hostile action of the deceased.    The prisoner had a pistol, and the evidence tended to prove his aggressive, deadly purpose, and he may, probably did, suddenly seek his opportunity to shoot his victim from the front of him.    But be this as it may, the facts in the evidence did not constitute evidence of manslaughter.    The whole evidence went to prove that the prisoner slew the deceased, moved to do so by express malice.    The jury, if they believed the evidence, could not justly have reached a different conclusion.

Affirmed.