ELIAS WATKINS v. RALEIGH & AUGUSTA AIR LINE RAIL-
                    ROAD COMPANY.

*Action for Damages—Case on Appeal—Delay in Service—*
      *Estoppel—Injury to Passenger—Negligence.*

1. Where appellee failed to serve his counter-case within five days as required by Chap. 161, Acts of 1889, but the appellant's counsel telegraphed that he would accept service on his return home, which he did, the telegram was an estoppel on appellant, for, but for the telegram, the appellee might have served the counter-case within the statutory time by leaving a copy at the residence or office of appellant or his counsel.

2. A passenger who alights from a moving train at the direction of the conductor is not, as a matter of law, guilty of contributory negligence when there was no appearance of danger within the locality where he alighted or in the rate of speed of the train.

116—61

This was a CIVIL ACTION for damages caused by the alleged negligence of the defendant, tried before His Honor *Brown, J.*, and a jury, at December Special Term, 1894, of RICHMOND Superior Court.

The following issues were submitted to the jury :

"1. Was the plaintiff injured by negligence of the defendant's agent ?

"2. Did the plaintiff by his own negligence contribute to the injury ?

"3. What damage, if any, has plaintiff sustained ?"

The plaintiff was introduced as a witness in his own behalf, and testified : On March 2, 1889, I bought a ticket from the defendant's agent at Manly to Aberdeen, five miles, for about 20 cents. I left Manly about 9 o'clock P. M. on one of the defendant's mixed freight and passenger trains. I had some bundles and packages in a sack. As the train approached Aberdeen I gathered up my bundle and got ready to get off. I looked out and saw some cars, and as we passed the depot I stepped to the door of the car. I found the conductor standing on the platform at the car door. The conductor then told me to hold on until we passed the switch on the other side of the depot. I stepped out on the platform. I held onto the banister rail of the step with one hand and stepped down on the lower step. The train was moving about as fast as a moderate walk. After we passed the switch the conductor said, "Step off right here, old man." He was standing right behind me when he said this. I obeyed his orders and stepped off on the ground as carefully as I could and broke my leg. The train did not come to a stop at all at Aberdeen; after I stepped off it went on faster. I found that my leg was broken and I began to crawl up on the track, but I heard another train coming and then I tried to crawl to get to Mr. McKethan's house ; while I was crawling

along I heard some voices of people passing by, one of them came to me. After awhile some men came with Mr. McKethan's buggy and wrapped me up in a blanket and carried me to the house of my son-in-law, Andrew Blue's. I was laid up until last of July; I went on crutches until the last of September. The next day after I was hurt the doctor came and bound up my leg. I still suffer a great deal of pain from the injury.

On cross-examination: I did not know the character of the soil, but could see the ground; I supposed that the conductor knew whether it was proper to get off. It was rainy and dark; I got off just when and where the conductor told me to. I saw the switch, and just after we passed it the conductor told me to get off. I was the only passenger on the train that night, and I was in the passenger car.

H. C. Dockery, W. T. Covington and D. Gay, all testified that the character of the plaintiff was good.

There was other evidence by other witnesses tending to show that the train did not stop at Aberdeen and that the place where plaintiff alighted from the train was about 700 feet beyond and south of the depot.

Wilson, witness for the defendant, testified: I was conductor on the train that night. The plaintiff got on at Manly going to Aberdeen, then known as "Blue's Crossing." Before we got to Manly I signaled to the engineer, who blew for station, and the brakes were put on and the train slowed up. Plaintiff walked out on the platform; I told him not to get off until the train stopped, that the train would come to a standstill. Before the train stopped the brakeman sang out "He is off." I did not see him get off. The train came to a standstill and remained so several seconds, when we started again. I told the plaintiff to hold up and not get off until the train stopped. I then

went on the other side of the train where I signaled to the engineer, when the brakeman shouted out " He is off; " the train was nearly to a standstill. Then after that I suppose we moved one-half car length before stopping. This station was not a regular station but only a flag station; we were only eight or ten car lengths from the station when we stopped; it was very wet and rainy.

Cross-examination : I did not stop at the station exactly, because it was a heavy mixed train and a little down grade, and a train will slide on a wet track. I never told plaintiff to wait until we got by the switch; I signaled the engineer a half dozen times with my lantern to go ahead. The train must have been at the station possibly one minute or a little less. I did not signal the engineer until the train had come to a full stop. The plaintiff had something like a sack and bed quilt under his arm. I do not consider it part of my duty to help male passengers off until the train stops. If plaintiff had stayed on the train until it stopped and had requested it, I would have moved train back to the station. He got off before the train stopped, against my warning. The train was well lighted up. I had lantern and brakeman had lantern also. I did not know that the plaintiff was injured until some days after.

Geo. Smith, witness for the defendant, testified : I was a brakeman on the rear of the train. It was a dark, rainy, drizzly night. It was down grade from Southern Pines to Aberdeen all the way. I was out on the platform all the way working the brakes. The engineer blew station blow some distance before we got to Aberdeen. He had plenty of time to stop if track had not been so slick. Plaintiff came out on the platform before we got to station house at Aberdeen, at least one quarter of a mile from the station. He had a sack tied around him, and bundles. The conductor told the plaintiff not to get off until the train stopped still; that

the train would run by the depot a little he expected, as the track was slick. The conductor said, "don't get off until I tell you." The conductor then went to the other side of the car to wave the engineer down; just then I saw the plaintiff jump off right in front of Mr. McKethan's house; he jumped off right into a pile of lumber. After he jumped off I hollowed to the conductor, "He is off." The train came to a dead stop in about a half car length, and I told the conductor again "He is off," and the conductor signalled the engineer to go ahead. The conductor did not see him jump off. The train stopped about five minutes.

There was testimony corroborative of the evidence of the conductor.

The defendant introduced B. Whiting, G. J. Freeman and —— Goodwin, who testified that the character of the witness Wilson was good.

The defendant here closed its case.

The plaintiff was recalled and testified in his own behalf: The soil where I jumped off was sandy. I did not jump off in any pile of lumber, and I had nothing tied around my neck; I had a corn sack under my arm with rations in it; it contained a bundle, 3 or 4 lbs. butter, some fish, tacks, pegs and shoemaker's tools.

The defendant's counsel requested the Court to instruct the jury that if they believed the evidence, the plaintiff could not recover, and that they would answer the second issue "Yes." The Court refused to give this instruction, and the defendant excepted to the refusal of the Court to give this instruction. The jury answered the issues as set out above. There was a motion by the defendant for a new trial, for the refusal by the Court to give the instruction asked. Motion overruled. Judgment for the plaintiff, and defendant appealed.

In this Court the defendant moved that the Court adopt its case on appeal instead of the one settled by the Judge.

It appears from the affidavit on file that the appellee's base was ready to be served upon the appellant within five days, but the counsel for the appellant being out of town, an agent of the plaintiff wired said counsel to know if he would accept service of the case, and he replied that he would when he saw the papers. When the counsel for the appellant returned to Rockingham he accepted service of the case, and he himself sent the papers to Judge *Brown*, with the request that he should settle the case, excepting however, to the failure of the appellee to file his counter-case within the statuatory time.

*Messrs. Jones & Tillett*, for plaintiff.
*Messrs. MacRae & Day*, for defendant (appellant).

CLARK, J. : The appellee's counter-case was not served in the five days required by the amendatory act of 1889, Ch. 161. The appellant could therefore insist on his motion that his statement should be taken as the true case on appeal (*Cumming* v. *Hoffman*, 113 N. C., 267) but for the fact that his counsel waived the objection by telegraphing that he would accept service on his return home, which he did. Though the appellant's counsel excepted when he sent the case and counter-case to the Judge with request to settle the case on appeal on the ground that the acceptance was after the expiration of the five days, the telegram was an estoppel; for, but for the telegram, the appellee might have served the counter-case within the statutory time by leaving a copy at the residence or office of appellant or his counsel. *Code*, Sec 597(3); *State* v. *Price*, 110 N. C., 599. The case as settled by the Judge must be taken as the case on appeal.

The entire charge of the Judge is not presumed to be sent up, but only that part having reference to the exceptions taken. *State* v. *Cox*, 110 N. C., 503. The instruction excepted to is fully sustained by the cases of *Lambeth* v. *Railroad*, 66 N. C., 494, and *Nance* v. *Railroad*, 94 N. C., 619. Indeed this is a stronger case against the defendant, as there was evidence that the train was moving very slowly and the plaintiff got off the train by direction of the conductor and with care. As the prayer for instruction, which was declined, was "that if the jury believed the evidence the plaintiff could not recover," this evidence, for the purposes of the exception, must be taken as true. Passengers alighting from trains at the direction of the conductor "are justified in assuming the place to be safe, and only under exceptional circumstances will their alighting be contributory negligence." Bishop Non-Contract Law, Sec. 1101. In Lambeth's case, *supra*, the passenger alighted on the platform and was killed. Here, fortunately, he got off on sandy soil and only his leg was broken. The case of *Burgin* v. *Railroad*, 115 N. C., 673, holds that the passenger is not justified in leaping from the train while in motion, unless invited to do so by the carrier's agent, and when it is not obviously dangerous, and approves Lambeth's case. In the present case, there was no appearance of danger, either in the locality itself or in the rate of speed at which the train was moving, which made it contributory negligence to obey the conductor's injunction to "step right off here, old man."

No Error.